UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL SMITH,

    Plaintiff,

v.

    Case No. 12-12428
    Honorable Laurie J. Michelson
    Magistrate Judge David R. Grand

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [16]**

Plaintiff Paul Smith was injured in a 2011 motorcycle accident. From approximately February 21, 2012, through October 5, 2012, Amira Medical Staffing, through licensed practical nurse Madonna Messing and certified nursing assistant Robin Foster, provided Plaintiff with "skilled nursing" and "in-home care" services. As part of this lawsuit for no-fault benefits, Plaintiff seeks reimbursement from Defendant State Farm Automobile Insurance Company for these services. State Farm "concedes that a question of fact exists with regard to the portion of the Amira bill pertaining to any skilled nursing services provided by Madonna Messing, LPN," (Dkt. 18 at 1), but seeks partial summary judgment with respect to the services provided by Foster. Defendant contends that the care provided by Foster constituted replacement services rather than allowable expenses under the Michigan No-Fault Act, Mich. Comp. Laws § 500.3107(1), and that Defendant already paid the maximum statutory rate for replacement services.

1

(Dkt. 16.) Plaintiff disagrees, arguing that there are genuine issues of material fact regarding the nature of the services provided by Foster. (Dkt. 17.)

The Court finds that some tasks provided by Foster—meal preparation; yard, house, and car maintenance; other daily household chores; and transportation not directly related to medical treatment—are replacement services as a matter of law. But the Court finds that other tasks—personal care, administration of medication, and transportation directly related to medical treatment—could be allowable expenses. Therefore, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion for Partial Summary Judgment.

## I. BACKGROUND

### A. Facts

The following facts are in large part undisputed. To the extent there is a dispute, both sides' views are represented.

On August, 27, 2011, Plaintiff was operating a motorcycle that collided with another motor vehicle, causing Plaintiff serious injuries. (Dkt. 1, Compl. ¶ 9; Dkt. 16, Def.'s Mot. for Part. Summ. J., Ex. A, Police Report at 2.) On February 21, 2012, Robin Foster, a certified nursing assistant employed by Amira Medical Staffing ("Amira"), began coming to Plaintiff's home to provide in-home care. (Def.'s Mot. for Part. Summ. J. at 6; Dkt. 17, Pl.'s Resp. to Def.'s Mot. for Part. Summ. J. at 5.)

Foster completed a "Weekly Home Health Aide Note" each week that described the services she performed. (*See* Pl.'s Resp. to Def.'s Mot. for Part. Summ. J., Ex. B. [hereinafter Weekly Notes].) The services included routine housekeeping such as preparing meals, laundering clothes, making the bed, and light housekeeping. (*Id*.) Foster

testified that her job was to "help [Plaintiff] if he needed help with dressing, light housekeeping, his appointments if he needed any, to run errands, to do his laundry if he needed [it] done . . . and prepare meals for over the weekend . . . [and prepare] his lunches. His breakfast." (Def.'s Mot. for Part. Summ. J., Ex. E, Foster Dep. 37 [hereinafter Foster Dep.].) She also explained how she washed dishes, took the dog out, organized the house, and "straightened up." (*See id*. at 41, 43, 46, 47.)

Foster described occasionally driving Plaintiff to his medical appointments and running errands as part of her routine. (*See id*. at 37.) She drove Plaintiff to his medical appointments in Caro, where he visited with a psychologist, to physical therapy appointments in Cass City and Bad Axe, and to the rehabilitation gym in Bad Axe. (*See* Weekly Notes at Pg ID 55, 70, 86.) She also drove him to non-medical locations including the grocery store, the bank, the post office, the laundromat, Family Dollar, Self-Serve Lumber, Walmart, City Hall, the Secretary of State, and the veterinarian. (*Id*.)

According to Foster, she did not order Plaintiff's medications or distribute them into his "med box," a box with an alarm designed to organize Plaintiff's medications and remind him when to take them. (Foster Dep. at 42.) She would, however, take the med box with her and the Plaintiff if they were to be away when a medication needed to be taken, and when the alarm sounded she would take the medication to him or Plaintiff would retrieve the medication himself. (*Id*. at 42, 64.)

In her Weekly Notes Foster wrote "self" next to some activities to indicate that she did not assist Plaintiff. (*Id.* at 40.) But Foster said that due to oversight, she would sometimes forget to write "self" when there were things he could do himself. (*Id*. at 79.) Foster clarified that Plaintiff was capable of doing the following on his own: dressing,

grooming, peri care, shampooing, skin care, nail care, and brushing his teeth. (*Id*. at 56, 62.) Plaintiff testified that initially, Foster would shower him and then later just help him get into the shower, until the grab bars were installed in the bath, at which point he was able to get in on his own. (Def.'s Mot. for Part. Summ. J., Ex. D, Smith Dep. at 110–11.) Plaintiff acknowledged, however, that he was confused about the timeline of events and was unsure whether the grab bars were installed before or after Amira started staffing his home. (*Id*. at 111–12.) According to Foster, the grab bars were already installed in the bathroom when she first arrived. (Foster Dep. at 32.) She testified that she washed Plaintiff's back in the shower "maybe twice" before he switched to a brush, at which point she no longer took part in his shower routine apart from her continued presence in the home in case there was an incident. (*Id*. at 57, 59.)

Foster did not describe or note any involvement in Plaintiff's rehabilitation exercises. (*See id.* at 48.)

Plaintiff claims Amira billed over $47,000 in charges for all care provided, of which approximately $36,000 pertains to the services provided by Foster. (Dkt. 18, Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Part. Summ. J. at 1.)

   **B. Procedural History**

On August 30, 2013, Defendant filed a Motion for Partial Summary Judgment arguing that "[b]ased upon the testimony of Plaintiff and Ms. Foster, it is clear that the services rendered were actually replacement services, rather than attendant care expenses" and that State Farm had already paid the maximum statutory rate for these replacement services. (Def's. Mot. for Part. Summ. J. at 7, 9.) Plaintiff filed a response on September 20, 2013. (Pl.'s Resp. to Def.'s Mot. for Part. Summ. J. at 8.) Plaintiff argues

that there exists a genuine issue of material fact with regard to the type of service provided by Amira Medical Staffing to Plaintiff. (*Id.*) Namely, Plaintiff describes the skilled nursing services provided by Madonna Messing, LPN, went unmentioned in the Defendant's original Motion for Partial Summary Judgment. (*Id.* at 4.) Plaintiff argues that these services, which consisted of managing medication and pain levels, qualify as allowable expenses. (*Id.* at 8.) On September 27, 2013, Defendant filed a reply, conceding that a question of fact exists with regard to the portion of the Amira bill pertaining to any skilled nursing services provided by Messing. (Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Part. Summ. J. at 1.) Defendant clarifies that its Motion pertains to Foster only. (*Id.* at 2.) Defendant argues that an "overwhelming majority" of the services rendered by Foster to Plaintiff were replacement services, rather than any type of allowable expense, and therefore Plaintiff is not entitled to any additional reimbursement for these claims. (*Id.* at 4.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

5

The moving party may discharge its initial summary judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party does so, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury, or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

## III. ANALYSIS

Plaintiff argues that Amira's bill for Foster's services from February 21, 2012, through October 5, 2012, constitutes an allowable expense under the No-Fault Act. (Pl.'s Resp. to Def.'s Mot. for Part. Summ. J. at 8, 10.) Defendant argues that the services provided by Foster are mainly household replacement services and that those services, as well as others provided, were not reasonably necessary for the care, recovery, or rehabilitation of the Plaintiff. (Def.'s Mot. for Part. Summ. J. at 7, 9.)

### A. Michigan's No-Fault Law

Under the No-Fault Act, a personal protection insurance provider is required "to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." Mich. Comp. Laws § 500.3105(1). These benefits can be divided into the categories

"allowable expenses" and "replacement services." *Id*. The parties here differ as to which category Foster's services fall into. Allowable expenses consist of "all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." Mich. Comp. Laws § 500.3107(1)(a). But as the Michigan Supreme Court clarified in *Douglas v. Allstate Insurance Company*, allowable expenses cannot be for "ordinary and necessary services" because ordinary and necessary services are not "for an injured person's care, recovery, or rehabilitation." 492 Mich. 241, 262 (2012). The *Douglas* court defined allowable expenses as a benefit that is distinct from replacement services under § 500.3107(1)(c). *Id.* (holding that those who provided replacement services should not be compensated as if they provided allowable expenses).

Replacement services as defined in § 500.3107(1)(c) consist of "expenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he or she had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or herself or of his or her dependent." Even if the replacement service is necessitated by the injury, it is not for the care, recovery, or rehabilitation of the injured and therefore it does not qualify as an allowable expense. *See Douglas,* 492 Mich. at 263.

In *Douglas*, the plaintiff sustained a severe brain injury and received aide care from his wife. Her services included: "organizing her family's day-to-day life, cooking meals, undertaking daily chores, maintaining the family's house and yard, ordering and monitoring plaintiff's medications, and communicating with health care providers." *Id.* at

7

252. The Michigan Supreme Court found the services that involved "daily organization of family life; preparation of family meals; yard, house, and car maintenance; and daily chores" were replacement services. *Id*. at 262. The court further defined replacement services as prototypical, ordinary and necessary services that are performed in every household. *Id*. at 262–63. Because these services are not done specifically for the injured person's care, they are not considered allowable expenses. *Id* at 263. Nevertheless, the *Douglas* court ruled that Mrs. Douglas' performance of some replacement services did not preclude her recovery for the allowable expenses. *Id*. The court clarified that "allowable expenses can include services that the injured person might have performed before he or she was injured as long as those services are not the type of ordinary tasks that a family member might perform for the benefit of the household as a whole." *Id*. at 261. The *Douglas* court favorably cited *Visconti v. Detroit Automobile Inter-Insurance Exchange*, 90 Mich. App. 477 (Mich. Ct. App. 1979), and *Van Marter v. American Fidelity Fire Insurance Co.*, 114 Mich. App. 171 (Mich. Ct. App. 1982), which described allowable expenses as entailing services such as aiding the injured person with their personal care, which includes bathing and dressing, as well as aiding them in their rehabilitation exercises, transporting them to the doctor, and administering medication. *Id*. Consequently, the *Douglas* court considered some of Mrs. Douglas' services to be allowable expenses, such as her involvement in the transportation to and communication with medical providers and her management of plaintiff's medication. *Id* at 261, 263.

The Michigan Court of Appeals provided further guidance on transportation expenses in *ZCD Transportation, Inc. v. State Farm Mutual Automobile Insurance Co.*, 299 Mich. App. 336 (Mich. Ct. App. 2012). There, a transportation provider filed an action to

8

recover insurance benefits under Michigan's No-Fault Act for the transportation costs of driving the injured motorist to medical appointments and non-medical-related personal trips. *See id*. The court found that although transportation to a doctor may qualify as an allowable expense, transportation expenses unrelated to medical treatment do not. *Id.* at 342. Non-medical transportation services are replacement services because this type of driving occurred before the injury, and but for that injury, the plaintiff could have driven himself. *Id*.

Plaintiff asserts that Foster's services qualify as fully covered "care" by relying on the broad definition of the word "care" used by the Michigan Court of Appeals in *In Re Carroll*, 300 Mich. App. 152, 157 (Mich. Ct. App. 2013). There, the court first concluded that a conservator's fee is always compensable under the label of allowable expense when the injured person's need for a conservator is related to an automobile accident. *Id*. But the Michigan Supreme Court vacated this judgment and asked the Court of Appeals to again address the issue in light of its decisions in *Johnson v. Recca*, 492 Mich. 169 (2012), and *Douglas. Id.* at 156.

On remand, the Court of Appeals relied on *Griffith v. State Farm Mutual Automobile Insurance Company,* in which the Michigan Supreme Court explained that the word "care" must be given a more limited meaning so as not to render meaningless the words that follow "care"—"recovery" and "rehabilitation." 472 Mich. 521, 533–34 (2005). The *Griffith* court found that the Michigan legislature intended to limit the scope of the term "care" to expenses for services that are rendered necessary by the injury sustained in the motor vehicle accident. *Id.* at 535. The court further concluded that the term "care"

9

referred to attention and service for the injuries that were causally related to an automobile accident. *Id*. at 531.

Using *Griffith*'s narrowed definition of "care" in relation to the scope of allowable expenses, the *In Re Carroll* court found the performance of household management constituted replacement services. *In Re Carroll,* 300 Mich. App. at 173.

### B. Application

Defendant requests summary judgment as to all of Foster's services, arguing that the overwhelming majority of services provided by Foster do not fall into the category of allowable expenses but rather replacement services, which have already been compensated. (Def.'s Mot. for Part. Summ. J. at 9.) The Court finds that Defendant's attempt to reject all of Foster's services is too broad because some of her activities may be allowable expenses. *See AC ex rel. White v. State Farm Mut. Auto. Ins. Co*., No. 12-13896, 2013 WL 5676807, at *4 (E.D. Mich. Oct. 18, 2013) (rejecting a defendant's overbroad argument that all services should be denied payment as replacement services because the result would deny Plaintiff proper compensation for allowable expenses). The fact that Foster performed primarily replacement services does not preclude Plaintiff from receiving proper compensation for allowable expenses performed by Foster. *See Douglas*, 492 Mich. at 263.

Defendant also argues that at least some of Foster's services should not be compensated because they were not reasonably necessary for Plaintiff's care, recovery, or rehabilitation for injuries incurred from the accident in question, as required under Mich. Comp. Laws § 500.3107(1)(a) and established by the court in *Griffith*, 472 Mich. at 526.

(Def.'s Mot. for Part. Summ. J. at 5, 7.) Plaintiff argues that this is a question for the jury. (Pl.'s Resp. to Def.'s Mot. for Part. Summ. J. at 7.)

The Michigan Supreme Court has ruled that "it is for the trier of fact to determine whether a medical charge, albeit 'customary,' is also reasonable." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 472 Mich. 91, 95 (2005). In *Nasser v. Auto Club Insurance Association*, the court likewise held that the question of "whether expenses are reasonable and reasonably necessary is generally one of fact for the jury." 435 Mich. 33, 55 (1990). (Pl.'s Resp. to Def.'s Mot. for Part. Summ. J. at 7.) But the *Nasser* court noted that it may be possible for the court to decide the question of the reasonableness or necessity of medical expenses as a matter of law if it can be said "with certainty" that an expense was both reasonable and necessary. *Nasser*, 435 Mich. at 55.

Here, viewing the evidence in the light most favorable to the nonmoving party, it would be difficult to say "with certainty" whether the medically-related services performed by Foster are reasonable and necessary. What is or is not reasonably necessary for Plaintiff's injuries in this case is a question for a jury, making qualification of these services inappropriate for summary judgment. Therefore, the Court will not grant Plaintiff's Motion for Partial Summary Judgment in its entirety.

Nonetheless, many of Foster's services are clearly replacement services under the case law. This determination does not require a finding that the services are or are not reasonably necessary. Preparation of family meals; yard, house, and car maintenance; and daily chores are replacement services as a matter of law. *Douglas*, 492 Mich. at 262. Defendant is entitled to summary judgment for replacement services that Foster provided in these categories including preparing meals, pet maintenance, and other light

housekeeping such as making the bed, organizing and cleaning the house, doing the laundry, and washing the dishes.

But some of Foster's other services may be allowable expenses, and Plaintiff may be entitled to recover for those. As noted earlier, services that aid the injured person with their personal care, such as dressing and bathing, are allowable expenses. *See id.* at 261. Foster's testimony indicates that her involvement in these services was very minimal. Her personal care services include washing Plaintiff's back "maybe twice." (Foster Dep. at 59.) But whether this was reasonably necessary for the care of Plaintiff's injuries is for a jury to decide.

Similarly, administering necessary medication is an allowable expense as a matter of law. *Douglas,* 492 Mich. at 261. Foster's involvement was again limited; she packed the med box when Plaintiff had a lengthy appointment and occasionally handed him his medication in the home. (Foster Dep. at 42, 64.) Whether this was reasonably necessary is for a jury to decide.

Transportation services that are not directly related to Plaintiff's medical treatment are not allowable expenses as a matter of law. *ZCD Transportation,* 299 Mich. App. at 342. Therefore the Court will grant summary judgment as to the non-medically-related driving costs including going to the grocery store, the bank, the post office, the laundromat, Family Dollar, Self-Serve Lumber, Walmart, City Hall, Secretary of State, and the veterinarian. But the court in *ZCD Transportation* found the reasonableness and necessity of the charges for medical transportation including wait-time was a question for a jury to decide. *Id.* at 343. This Court will therefore not grant summary judgment as to

Foster's charges for medically-related transportation or for her charges regarding the wait time associated with these medical visits.

## IV. CONCLUSION

The Court finds that some tasks provided by Foster—meal preparation; yard, house, and car maintenance; other daily household chores; and transportation not directly related to medical treatment—are replacement services as a matter of law. But the Court finds that other tasks—personal care, administration of medication, and transportation directly related to medical treatment—could be allowable expenses. Therefore, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion for Partial Summary Judgment.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated: July 3, 2014

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 3, 2014.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson
